244 A.2d 570.

## STEVEN C. LAWRENCE *vs.* ROSS CALIN.

JULY 25, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a petition in equity in the nature of quo warranto brought pursuant to G. L. 1956, §10-14-1, whereby the petitioner seeks the ouster of the respondent as a commissioner of the housing authority of the town of Johnston and the confirmation of his title to that office. The petitioner claims the office by virtue of an admittedly proper appointment and qualification and an alleged illegal removal therefrom by the Johnston town council after a hearing on the specific charges of "neglect of duty and misconduct in office."

Before proceeding further we deem it appropriate to make the following observations. We issued the writ in this cause on October 16, 1967. A citation directed the municipality to forward us the pertinent records on or before November 6, 1967. The record was not produced at the appointed time. Subsequently, numerous requests were made of the town for prompt compliance with our directives. Finally, after repeatedly receiving unsatisfactory responses, this court felt reluctantly constrained to issue an order to the clerk of the Johnston town council directing him to appear before us on February 5, 1968 to show cause why he should not be held in contempt for what appeared to be an unwarranted delay in producing the necessary records in this case. On February 2, 1968, the town solicitor appeared at last and presented the record to us. The dilatory manner in which the town of Johnston has responded to our directives is indeed highly regrettable especially when, as here, a man's reputation and integrity are questioned.

The Town of Johnston Housing Authority was organized pursuant to the provisions of §45-26-5. The general assembly has constituted a municipal housing authority as "* * * a public body and a body corporate and politic * * *" and given it extensive powers. The authority is composed of five

commissioners who are appointed to serve a definite term without compensation. The purposes and objects of a housing authority are well known. Aided by funds which are provided by the federal government, a local housing authority can acquire land and build thereon public housing facilities to service the needs of various segments of our citizens. At the time the instant controversy erupted, the Johnston authority was building a housing project designed especially for the elderly.

The petitioner is an employee of one of the state's largest banks. He works in the portfolio management section of the bank's investment department. The council appointed him as a housing commissioner on July 28, 1965, to serve in that position until September 11, 1968. This period of time represents the unexpired term of John D. Guido, who had resigned as a commissioner to become the authority's executive director at a salary of $4,800 a year. The petitioner served the first year and a half of his term in comparatively peaceful circumstances. There then occurred a series of events which culminated in his being discharged from office and the ensuing litigation.

When the authority held its regular monthly meeting in December, 1966, Vito A. Petrone assumed office as a new commissioner succeeding an individual who had been the authority's vice-chairman. At this meeting, petitioner was elected to the vacant post of vice-chairman. During the course of its meeting, the authority approved a resolution, by a vote of three to two, ordering Guido to submit within 30 days his resignation as executive director. Admittedly petitioner was one of the three commissioners who voted in favor of the requested resignation. Guido did not resign. Instead, he drafted a letter dated January 9, 1967, and sent it to councilman Thomas L. Ucci, who that same day was chosen council president by the newly-elected town council of Johnston. In his letter, Guido claimed that his removal

was illegal and politically motivated. He listed as a reason for the demand for his resignation his alleged refusal to transfer the authority's banking business to the bank where petitioner worked. About a week after its organization, the town council voted to conduct a hearing on the allegations contained in Guido's letter. Pursuant to the council's direction, the town clerk dispatched a letter to petitioner whereby it notified him that a council hearing was to be held as a result of the charges made against him by Guido. The notice informed petitioner that he was "* * * being charged specifically with neglect of duty and misconduct in office." The notice-letter further listed seven separate accusations offered in support of the charges lodged against petitioner.

In due course, three different council hearings were conducted on this matter, two of which lasted approximately four hours and the third approximately two and one-half hours. During the hearings the council heard testimony from four people — Guido, the chairman of the Johnston Housing Authority, an official from the bank at which petitioner is employed, and petitioner himself. An affidavit executed by one of petitioner's co-employees at the bank was accepted and made a part of the record. Our reading of the stenographic transcript of the hearings and our listening to the audio tape recordings of the proceedings lead us to the conclusion that the orderly decorum and dispassionate objectivity which should accompany a quasi-judicial hearing were ruefully missing.

On April 20, 1967, the council met in special session at which the town clerk read a 13-page decision which held that petitioner was clearly "* * * guilty of inefficiency, neglect of duty and misconduct in office." The decision stated that the evidence supported only five of the seven accusations made against petitioner. Upon motion being made and seconded, it was voted to accept the decision. Three councilmen voted in favor of the motion, one opposed

it and the fifth councilman was absent. Moments after this vote, the same three members voted to remove petitioner from office and elected respondent to fill petitioner's unexpired term.

Initially, we wish to point out that there is a variance between the council's ultimate findings and the notice sent to petitioner on January 23. That notice expressly stated that there were two specific charges to be considered by the council—"neglect of duty and misconduct in office,"—whereas in its decision the council curiously found petitioner guilty of a third charge of "inefficiency." Because of our decision, we deem this difference of little significance.

With respect to the present petition there are, in our opinion, two issues raised. The first is whether or not the council effectively and lawfully expelled petitioner from his position as commissioner in view of the fact that only two of the five councilmen were present for all of the hearings in question. The second is whether or not there was introduced in the record any legally competent evidence which would warrant a finding that petitioner was guilty of "* * * inefficiency or neglect of duty or misconduct in office * * *" as those terms are used in the context of §45-25-14. For the reason that our decision of the second issue disposes of the instant petition, it is unnecessary to consider the first issue.

Since the evidence at the hearings was not in any way identified with any one specific accusation, but was introduced in potpourri fashion, it is difficult to relate each item of evidence to any specific accusation. Essentially, though, the accusations fall into two categories: first, those which concern the use of undue influence by petitioner on Guido to obtain for his employer the housing authority's banking business; and second, those which deal with petitioner's attempt to have Guido removed as the authority's executive director.

Although a housing authority in any town in the state is organized pursuant to chap. 26 of title 45, the authority and its commissioners are subject to all the provisions of chap. 25 of title 45 which relate to an authority organized by any of our cities. Section 45-25-14 states that a commissioner may be removed for inefficiency or neglect of duty or misconduct in office only after he has been given a copy of the charges against him at least 10 days prior to any hearing thereon and has had an opportunity to be heard either personally or by counsel. The general assembly has not defined the terms "inefficiency," "neglect of duty" or "misconduct in office." Nor has the legislature expressly set forth a commissioner's duties except in §45-25-12 wherein it says, "The authority and its commissioners shall be under a statutory duty to comply or to cause compliance strictly with all provisions of chapters 25 to 27, inclusive, of this title and the laws of the state, and in addition thereto, with each and every term, provision and covenant in any contract of the authority on its part to be kept or performed." Since a removal proceeding being held pursuant to §45-25-14 is unquestionably judicial in nature, the reasons for removal cannot be arbitrary or capricious but must rest on substantial grounds. *Aniello* v. *Marcello,* 91 R. I. 198, 162 A.2d 270; *Mellor* v. *Leidman,* 100 R. I. 80, 211 A.2d 633.

This court held in *Jackvony ex rel.* v. *Berard,* 66 R. I. 290, 18 A.2d 889, that in order to remove a municipal housing commissioner, the charges of inefficiency, neglect of duty or misconduct in office must relate to and have a bearing upon the conduct of a commissioner only in connection with the performance of his duties under the statute as a housing commissioner. Any other kind of inefficiency, neglect or misconduct, we said, is immaterial and irrelevant so far as removal proceedings are concerned. We have reviewed the five accusations of which petitioner was

adjudged guilty and the testimony offered in support thereof in the light of the rule of *Jackvony* and find that none of them furnishes any lawful basis for removing petitioner from his office.

Of these five accusations only one of them contains language which might seem to indicate that petitioner has violated a statutory obligation. It is accusation No. 3, the relevant portion of which reads as follows:

> "That you did have an indirect interest in the financial services to be performed for the Johnston Housing Authority * * * and that you did not have your interest entered upon the records of the Authority."

The respondent claims that in substance this accusation sets forth a violation of §45-25-13 which states:

> "No commissioner or employee of an authority shall acquire any interest direct or indirect in any housing project or in any property included or planned to be included in any project, nor shall he have any interest direct or indirect in any contract or proposed contract for materials or services to be furnished or used in connection with any housing project. If any commissioner or employee of an authority owns or controls an interest direct or indirect in any property included or planned to be included in any housing project, he shall immediately disclose the same in writing to the authority and such disclosure shall be entered upon the minutes of the authority. Failure to so disclose such interest shall constitute misconduct in office."

The evidence which is relevant to this accusation shows that petitioner's employer was the low bidder on two series of notes issued by the authority in the mid-summer and late fall respectively of 1966. The record reveals that of the three banks which bid on these notes, petitioner's employer was the low bidder. The authority also had invested $100,000 in a 30-day certificate of deposit issued by this particular bank. Guido admitted that the $100,000 deposit was made because this bank agreed to pay the highest rate of interest of all the banks he had contacted relative

to this money. The respondent contends that petitioner had an interest in these transactions which, in compliance with the statute, he should have noted on the authority's records. We believe otherwise.

A close examination of the statute relied on by respondent indicates that a disclosure of an interest is required only in those cases where the commissioner owns or controls an interest, directly or indirectly, in any property which is included or planned to be included in any particular project undertaken by the authority. This is not the case before us.

We believe that prohibitions relative to any conflict of interests contained in §45-25-13 have no relevance to petitioner's position with the bank. We believe the banking services offered the authority by petitioner's employer do not come within the statute's purview. One need only examine the definition of a "housing project" as set forth in §45-25-3(10)[1] to come to this conclusion. The legislature, in our opinion, sought to prohibit through its enactment of §45-25-13 a member of a housing authority from having any surreptitious financial interest in any property that might be included within a project undertaken by the authority. With regards to any contracts for material or services to be furnished or used in connection with any specific project, we conclude that the legislature did not intend to include within its scope the services which a banking institution might provide for a housing authority. It is our belief that the services envisioned in this regard were those

[1] "(10) 'Housing project' shall include all real and personal property, buildings and improvements, stores, offices, lands for farming and gardening, and community facilities acquired or constructed or to be acquired or constructed pursuant to a single plan or undertaking (a) to demolish, clear, remove, alter or repair unsanitary or unsafe housing, and/or (b) to provide safe and sanitary dwelling accommodations for persons of low income. The term 'housing project' may also be applied to the planning of the buildings and improvements, the acquisition of property, the demolition of existing structures, the construction, reconstruction, alteration and repair of the improvements and all other work in connection therewith."

which are concerned with the everyday operations of a project such as garbage removal, rubbish removal, maintenance services and similar endeavors. Accusation No. 3, therefore, affords no strength to the council's efforts to discharge petitioner.

In our view, the remaining four accusations and the town council's decision thereon are legally insufficient to provide a basis for petitioner's dismissal. As to the purported pressure—the substance of accusation No. 1—that petitioner is alleged to have exerted on Guido to transfer the authority's banking accounts, we point out that since banking services are not within the proscriptions of §45-25-13, petitioner could properly seek to have the authority's depositary accounts transferred to the bank in which he worked. In addition, an examination of the bylaws of the housing authority reveals that the commissioners, and not the executive director, have the prerogative to choose which bank shall house the depositary for their funds. Moreover, the record is devoid of any competent evidence that "undue" or "improper" influence was ever exercised upon Guido by petitioner. All that appears in support of this particular allegation is Guido's subjective interpretation of the overtures made to him by petitioner with regard to changing the authority's bank account to the bank which employed petitioner. Guido's testimony acknowledged that no threats or other forms of intimidation were brought to bear on him and his testimony as to the number of times he was in contact with petitioner between the day on which he *felt* pressure and the night on which his resignation was ordered is unclear and unsatisfactory.

With reference to accusations No. 2 and No. 5, unlike the council, we can find no fault either with petitioner's carrying his employer's sealed bid to the office of the authority on the day bids were opened on loan contracts nor with his conferring with some or all of his fellow commis-

sioners relative to the removal of the authority's executive director. As to the bid, the record is uncontradicted that all bids received that day were sealed and nothing irregular occurred when they were opened. As to his conversations with other commissioners regarding the removal of Guido as director, we are likewise at a loss to conjure how such conduct could be seriously classified as an impropriety. In fact, it is the commissioners' duty to appoint a director of the authority. As to the allegation that petitioner conferred with two of his co-commissioners on replacing a director without prior approval of the housing authority, we can only remark that the commissioners acting as a corporate body represent the authority itself. Indeed, when they so act, they are the housing authority! The contention that the commissioners seek prior approval of the authority before acting in accordance with their duty clearly indicates a complete misconception of the function of the office of commissioner within the corporate structure of the housing authority. Furthermore, contrary to what the town council has decided, we find nothing in the general laws which requires the commissioners to obtain prior approval of the federal housing authority before dismissing an executive director.

The last accusation, designated as No. 7, which the town council relied upon in dismissing petitioner, is the most obscure, vague and incomprehensible of all. Indeed it defies intelligent classification. It reads:

"All of the above specific charges referring to your inefficiency, neglect of duty and misconduct in office."

It apparently is obliquely grounded on the preceding six accusations. We can only surmise that it was intended as some magical catchall phrase apparently designed to unify the shadowy arguments in support of petitioner's dismissal. Logically, legally and grammatically, accusation No. 7 is inexplicable and meaningless.

We therefore decide that the petitioner has been unlaw-

fully and improperly removed from his office as a commissioner of the Johnston housing authority. In our opinion, the record is barren of any legally competent evidence which shows that the petitioner was guilty of any inefficiency, negligence or misconduct in the discharge of his duties. The council's action was improper and without warrant of law. This being the case, no vacancy was created or existed and any appointment made by the council to succeed the petitioner as commissioner is invalid, illegal and void.

The petitioner is legally entitled to the office of commissioner of the Johnston housing authority; the respondent is not so entitled; and the respondent is forejudged and excluded from exercising or using the office of commissioner of the housing authority of said town of Johnston or the privileges thereof. The parties may present a decree to the court in chambers in accordance with this opinion.

*Eugene A. Liberati,* for petitioner.

*John P. Bourcier,* attorney for respondent Ross Calin; *Frederick R. DeCesaris,* Assistant Town Solicitor, attorney for respondent Johnston Town Council.