293 A.2d 904.

FRANK J. CENTAZZO *vs.* DOMENIC C. CANNA.

AUGUST 10, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

508

KELLEHER, J.  This petition in equity in the nature of quo warranto is brought pursuant to G. L. 1956 (1969 Reenactment) §10-14-1.  It seeks the ouster of the respondent as a commissioner of the Housing Authority of the town of Bristol and the confirmation of the petitioner's title to that office.  The petitioner claims the office by virtue of admittedly proper appointment and qualification and an alleged illegal removal therefrom by the Bristol Town Council because of various acts of "inefficiency" or "neglect of duty" or "misconduct in office."

The petitioner was first duly appointed as a commissioner on January 17, 1963 for a five-year term.  He was reappointed for a second five-year term on February 21, 1968.  During his years of service, petitioner was the chairman of the Board of Commissioners.  Bristol has seen the fruition of some of the efforts of the authority in that there is now located in that municipality a housing complex dedicated to serving the needs of the elderly.  It is known as the Ben-

jamin Church Manor and contains 150 dwelling units. It is also obvious from the record that the authority's attempts to comply with federal regulations requiring the construction of low-income housing has not won the community-wide acceptance given the opening of the Benjamin Church Manor.

On January 14, 1971, the council, in seeking to remove petitioner, specifically charged that petitioner (1) used profane and vulgar language against the elderly of the town; (2) threatened to evict tenants from Church Manor; (3) sought the resignation and threatened to fire an employee of the authority; (4) failed to file certain financial reports; (5) had a conflict of interests; and (6) condoned the unlawful employment of a fellow commissioner.

Two public hearings were held on the charges. The first was held on the evening of February 8, 1971. The second was held four evenings later on February 12, 1971. The taking of testimony ended at 9:45 p.m. The council entered into executive session. The council subsequently reconvened and the president announced that petitioner had been found "guilty as charged." One motion was unanimously passed removing Centazzo from office and another calling for the appointment of Canna received the council's affirmative vote. Canna took his oath of office and the meeting adjourned at 11:03 p.m.

This is the second occasion within recent years where this court has reviewed a town council's discharge of an incumbent member of a municipality's housing authority. In *Lawrence* v. *Calin,* 104 R. I. 373, 244 A.2d 570 (1968), it was pointed out that although §45-25-14 authorizes the removal of a housing commissioner on the grounds of "inefficiency," "right of duty" or "misconduct in office," the Legislature has failed to define any of these three terms. It was emphasized that when removal is sought on these grounds, the inefficiency, neglect or misconduct charged must relate solely to

the duties imposed upon the commission by the provisions of title 45, chap. 25[1] and since proceedings to remove a commissioner are judicial in nature, the reasons for his removal must rest on substantial grounds.

At oral argument, counsel for respondent described petitioner's conflict of interests as the strongest reason for his removal. Accordingly, we shall initially review the evidence as it relates to that specific charge and then go on to discuss the other specifications lodged against petitioner but not necessarily in the order they were listed by the council. Section 45-25-13 (see Appendix) is the statute which relates to a housing commissioner having a conflict of interests. This statute requires a commissioner, having a direct or indirect interest in any property which is scheduled to be included within a housing project, to make a written disclosure of his interest. The statute goes on to say that failure to disclose such interest shall constitute "misconduct in office."

A housing commissioner serves without compensation. The petitioner is an accountant. He works full time for the Division of Services to the Aging of the Rhode Island Department of Community Affairs where he serves as an assistant to the division's director. He supplements his salary by moonlighting. One of his clients is the Bristol Senior Center. This is an organization whose goal is the promotion of various recreational and educational activities which are made available to all of Bristol's senior citizens. The center serves as the recipient of various federal, state, municipal and private funds which provide the wherewithal so that those over the age of 55 can receive instructions relating to such skills as ceramics, sewing and crocheting, or they can take a bus ride to see a movie, visit a beach resort

---

[1] A town housing authority is organized pursuant to the provisions of title 45, chap. 26. The authority and its commissioners are subject however. to the provisions of title 45, chap. 25, which relate to an authority organized by a city.

or view the autumnal foliage. While the center's activities are headquartered in the community building of the Benjamin Church Manor, the center is an organization which is separate and distinct from the Housing Authority. The Division on Aging distributes the federal funds made available by the Older Americans Act of 1965. The money is channeled from the United States Department of Health, Education and Welfare through the state agency on down to the center. The authority receives its federal funds from the Department of Housing and Urban Development.

The council took the sum total of Centazzo's state job, his position on the authority and his accounting work for the Senior Center and came up with the answer that it read as "conflict of interests." It apparently overlooked the *Lawrence* case where we said the conflict of interests provisions delineated in §45-25-13 were designed to bar a member of a housing authority from having a secret personal interest either in property that might be part of a housing project or in some services that were to be rendered at the project, such as the removal of rubbish or garbage, the supply of janitorial or maintenance services or similar undertakings.

Here, the record is clear that there is no conflict between Centazzo's duty as a commissioner and the service he renders to the Senior Center. In fact, he made it clear that he had been advised by his superiors in state government that they find no conflict between his work with the center and his obligation to the division.

This is an appropriate place to dispose of the charge that petitioner had permitted one of his fellow commissioners to work in violation of the law. The commissioner's name was Borges. He was a senior citizen who had retired. He worked for the Bristol Senior Center as a jack-of-all-trades. Borges purchased supplies, kept time sheets, collected the lunch money from those who ate at the center and sched-

uled the arts and crafts classes. He was paid $2 an hour. His work week averaged about 15 hours. As noted before, the center is not part of the authority. The conflict of interests statute just is not applicable to the Borges situation.

The petitioner's language difficulty occurred in the afternoon of January 5, 1971. At that time, he dropped in on the regular monthly meeting of the Senior Citizens Council. The meeting was being held in the Manor's community room. The membership in the Citizens Council, like membership in the Senior Center, is opened to all Bristolians who have attained the age of 55. As an organization, it is an agency which operates independently of either the Housing Authority or the Senior Center. As Centazzo looked on from the back of the room, the authority's secretary was in the midst of telling the assembled group that she had been asked to resign her position. The petitioner was invited to reply to her remarks and, in the emotional address to the group, made an unfortunate reference to a portion of his anatomy which in turn formed the basis of the charge concerning his profane and vulgar language. In its bill of particulars, the council declared that Centazzo had said, "You people are out to get my ass."

However, the president of the Citizens Council, in testifying, quoted Centazzo as saying, "I work my ass off for you people but you don't care." A reporter who was present at the meeting said he could not recall in what context petitioner's posterior appeared during Centazzo's remarks. The local scribe stated that it was his impression petitioner said that the town council was out to get "my ass."

We are not at this juncture prepared to delve into a philosophical dissertation delineating the difference between profanity and vulgarity. Profanity has been defined as words denoting an irreverence of God and holy things. *Cason* v. *Baskin,* 155 Fla. 198, 20 So.2d 243 (1944). Vulgarity

might be defined as remarks which show a lack of cultivation and refinement or are offensive to good taste and refined feelings. *See Darnell* v. *State*, 72 Tex. Crim. 271, 161 S.W. 971 (1913).

The petitioner's outburst can be classified as vulgar. The sensibilities of some of those senior citizens who were present were shocked but it was of short duration. One of the members testified that the meeting followed its usual routine and ended with the traditional serving of coffee and cake. Apart from all this, there is nothing in the record which shows petitioner's temporary lapse from good grammar and good taste in any way interfered with the operation of the authority's progress. While petitioner's remarks were regrettable, they do not constitute sufficient grounds to warrant his removal from office.

The alleged eviction threat came at the January 5, 1971 meeting. Many of the tenants of Church Manor are members of the Citizens Council. In substance, petitioner told the council membership that if the makeup of the authority changed, the new members could promulgate new policies which could result in the eviction of many of the present tenants. This was no threat to evict the tenants but merely petitioner's view that a shakeup in the authority could bring a change in policy that might work to the tenants' disadvantage. A prognostication, yes; a bad one, perhaps, but certainly no threat.

The "threatened" employee described in the charges was the secretary who had addressed the meeting of the Senior Citizens Council. In a letter dated December 26, 1970, and sent to the secretary, petitioner intimated that she was leaking confidential information to the town council and "the objectors" to the authority's program. He asked for her resignation but told her that she could seek a hearing of the other commissioners. The petitioner expressed the wish that the contents of his letter be held in the strictest

confidence. The secretary, however, decided to divulge its contents at the January meeting of the Senior Citizens Council. Once again, there is no indication that this request amounted to inefficiency, neglect of duty or misconduct. We think this is a proper request by one holding such a responsible position as petitioner. Parenthetically, it should be pointed out that subsequent to this episode, the secretary was fired.

The specification referring to petitioner's failure to file financial reports with the council merits little consideration. The simple answer is that there is no such statutory requirement. Section 45-25-31 merely requires an annual report to be filed detailing the activities of the past year and including the commissioners' recommendations for any further legislative or executive action that might implement the purposes of the legislation which has led to the creation of the many housing authorities now operating within this state. The town clerk informed the town council that the reports called for by the statute had been filed.

The record is devoid of any legally competent evidence which shows that the petitioner was guilty of any inefficiency, negligence or misconduct in the discharge of his duties. The council's removal was improper and without warrant of law. This being so, no vacancy was created or existed and Canna's appointment is invalid, illegal and void.

The petitioner is legally entitled to the office of commissioner of the Bristol Housing Authority; the respondent is not so entitled; and the respondent is forejudged and excluded from exercising or using the office of commissioner of the housing authority of said town of Bristol or the privileges thereof. The parties may present a decree to the court in chambers in accordance with this opinion.

## APPENDIX

"45-25-13. Interest of commissioners or employees in property.—No, commissioner or employee of an authority shall acquire any interest direct or indirect in any housing project or in any property included or planned to be included in any project, nor shall he have any interest direct or indirect in any contract or proposed contract for materials or services to be furnished or used in connection with any housing project. If any commissioner or employee of an authority owns or controls an interest direct or indirect in any property included or planned to be included in any housing project, he shall immediately disclose the same in writing to the authority and such disclosure shall be entered upon the minutes of the authority. Failure to so disclose such interest shall constitute misconduct in office."

*Anthony R. Berretto,* for petitioner.

*Emilio D. Iannuccillo,* Town Solicitor, for respondent.